Joseph Moller, Jr., and J. H. Schumann, partners, trading under the firm name of Moller and Schumann, Bridgeport Brass Company, The F. W. Devoe and C. T. Raynolds Company, and S. W. Gardner and George I. Gardner, partners, trading under the firm name of S. W. Gardner and Company, Appellants, *v.* The Keystone Fibre Company, Robert W. Reynolds, Trustee and Attorney in fact, Morton Decker, J. H. Shotwell, Ed. T. Smith, Milton Yetter, J. H. Zacharias, Daniel R. Brown, Executor, Henry H. Teeter, Frank H. Smith, George E. Stauffer, Robert W. Reynolds, Philip Ruster, Peter Charles, Isaac S. Case, Seiders & Co., H. Frisbie, Moses Detrick, Albert W. Knapp, A. W. Loder & Sons, A. R. Brittain, Joseph Overfield, and Joseph H. Shull.

*Corporations—Directors' meetings—Illegality of meeting—Ratification.*

A resolution authorizing the assignment of certain insurance policies passed at a meeting of the directors of a corporation, of which meeting two of the directors did not have timely notice, is voidable, but if no officer or stockholder of the company makes any objection to it, their acquiescence must be accepted as a ratification of the resolution ; and no creditor of the company can question its validity.

*Corporations—Preferences.*

A corporation, as well as an individual or copartnership, may prefer one creditor to another if the preference is honestly made to secure or satisfy a bona fide debt.

*Corporations—Preferences—Directors.*

A director who is also a creditor of an insolvent corporation may not by his own vote obtain a preference for his claim over the claims of other creditors.

The fact that one of the parties benefited by a preferential assignment made by an insolvent corporation is a director of the corporation is not fatal to the preferences lawfully created and conferred by it.

Argued March 8, 1898. Appeal, No. 249, Jan. T., 1897, by plaintiffs, from decree of C. P. Monroe Co., May T., 1896, No. 23, dismissing bill in equity. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Bill in equity to declare an assignment null and void.

The facts appear by the following portion of the opinion of the court below, by CRAIG, P. J.:

This is a bill in equity brought by the plaintiffs against the defendants for the purpose of restraining and enjoining Robert W. Reynolds, trustee and attorney in fact, from paying the moneys received from certain insurance companies under policies held by the Keystone Fibre Company, by reason of the loss resulting from the destruction by fire of the Keystone Fibre Company's plant, to the assignees named in an assignment, dated November 26, 1894, purporting to assign the insurance moneys to the parties named therein, as assignees; also to have the assignment decreed null and void, canceled and set aside; and also, that the said Robert W. Reynolds, trustee and attorney in fact, be ordered, decreed and directed to pay to the plaintiffs the several sums due them respectively by reason of the attachments in execution, hereinafter mentioned, together with legal interest and costs.

FINDINGS OF FACT.

1. The Keystone Fibre Company was incorporated under the laws of the state of Pennsylvania, on January 26, 1894. Afterwards the said Keystone Fibre Company purchased from R. W. Reynolds, trustee, by deed, dated January 27, 1894, and recorded in the office for recording of deeds, etc., at Stroudsburg, in and for the county of Monroe, a lot or piece of land, situate in the borough of East Stroudsburg, on which lot or piece of land were afterward erected buildings which comprise the manufacturing plant of the Keystone Fibre Company; that the said corporation did business in the borough of East Stroudsburg, where its principal office was located, and had five directors, whose names and residences were as follows:—Uzal Hull, Stroudsburg, Pa., who was also the president of the company; Morton Decker, East Stroudsburg, Pa., who was also the secretary of the company; Hiram Frisbie, Stroudsburg, Pa., who was also the treasurer of the company; E. S. Doughty, New York City; and J. M. Wyatt, New York City.

2. On January 29, 1894, the Keystone Fibre Company executed a mortgage for the sum of $12,000, which was made payable to Robert W. Reynolds, trustee for the bondholders, at any time within ten years. This mortgage contained a provision,

as follows: "And provided that the said party of the first part (the Keystone Fibre Company) shall keep the buildings and machinery on said land insured in some good and reliable fire insurance company or companies against accident and loss by fire in the sum of not less than $12,000, the loss, if any, payable to the trustee mentioned in this mortgage, as the interest of the said trustee may appear."

3. On the days hereinafter mentioned, policies of insurance were taken out in the following named companies, and for the following amounts: March 12, 1894, Fire Association of Philadelphia, $2,500, for the term of one year; March 19, 1894, Lebanon Mutual Fire Insurance Company, $1,000, for the term of one year; April 7, 1894, Lancashire Fire Insurance Company, $1,500, for the term of one year; March 1, 1894, American Central Insurance Company, $2,000, for the term of one year; March 1, 1894, The Ætna Insurance Company, $2,000, for the term of one year; March 1, 1894, Phœnix Insurance Company of Hartford, $2,000, for the term of one year; April 2, 1894, American Fire Insurance Company of Philadelphia, $1,500, for the term of one year; April 5, 1894, The New York Bowery Fire Insurance Company, $1,000, for the term of one year. Each of these policies bore the following indorsement, viz: "Loss, if any, payable as interest may appear, first to R. W. Reynolds, trustee for the bondholders." And each of these policies of insurance was in full force at the time the property was subsequently destroyed by fire.

4. Judgments were subsequently obtained against the Keystone Fibre Company, in the court of common pleas of Monroe county, in the order and for the amounts following: Montgomery & Co., $106.44; Shenandoah Pulp Co., $259.82; American Woodboard Co., $189.87; E. B. Estes & Son, $106.69; F. W. DeVoe & C. T. Raynolds Co., $187.20; Bridgeport Brass Co., $192.86; Moller & Schumann, $555; Mann Bros. & Co., $535.83; Stroudsburg National Bank assigned to Morton Decker, $506.93; S. W. Gardner & Co., $157.83; Morton Decker, $1,253.95; R. W. Reynolds, trustee for Morton Decker, J. H. Shotwell, Edward T. Smith, Milton Yetter, East Stroudsburg Lumber Co., Limited, Joseph Zacharias, D. R. Brown, executor, George E. Stauffer, F. H. Smith, R. W. Reynolds, Philip Ruster, Peter Charles, I. S. Case, Seiders & Co., Hiram Frisbie, Moses Detrick,

A. W. Knapp, A. W. Loder & Sons, C. L. Rhodes and A. R. Brittain, $2,641.50; G. E. Stauffer, $834.61.

5. On September 28, 1894, a ven. ex. de. terris was issued out of the said court of common pleas, at the suit of the said Montgomery & Co., to December term, 1894, No. 15, by virtue of which writ, the sheriff, on December 8, 1894, sold the said real estate to R. W. Reynolds, trustee, for the sum of $5,500, it having been announced, before bidding on the property began, that the same would be sold divested of the lien of the said mortgage of R. W. Reynolds, trustee, and the said property was so sold, to wit: divested of the lien of the said mortgage of R. W. Reynolds, trustee.

6. The proceeds from the sale of the real estate, less the costs of the proceedings, were paid into court under a rule on the sheriff; and Charlton Burnett, Esq., was appointed an auditor to report distribution of the fund in court, who afterwards filed his report in said court, distributing the whole net fund, to wit: the sum of $5,153.12 to the said R. W. Reynolds, mortgagee and trustee.

7. On November 23, 1894, the said Keystone Fibre Company's plant was partially destroyed by fire, which resulted in a loss, subsequently adjusted, in the sum of $12,360. All of which was received by said R. W. Reynolds, less about $900 due from the New York Bowery Fire Insurance Company.

8. On November 24, 1894, attachments in execution were issued on their judgment by the said F. W. DeVoe & C. T. Raynolds Company, by said Moller & Schumann; by said Bridgeport Brass Company; and by said S. W. Gardner & Co., attaching all moneys due or to become due from said insurance companies, above mentioned, to the said Keystone Fibre Company by reason of the said loss by fire, which said attachments in execution were duly served on November 26, 1894, and the said insurance companies summoned as garnishees.

9. On Monday, November 26, 1894 (being the next business day after November 24, aforesaid), at eight o'clock in the morning Uzal Hull, Morton Decker, and Hiram Frisbie, three of the directors of said Keystone Fibre Company, held a special meeting of the board of directors of the said Keystone Fibre Company, at the office of said Morton Decker, in the borough of East Stroudsburg, when and where a resolution authorizing an

assignment of the interest of the said Keystone Fibre Company in certain insurance policies named therein was adopted and passed, and, in pursuance of said resolution, an assignment of the interest of said company, in said insurance policies to the said creditors was formally executed and delivered on the same day, to wit: November 26, 1894, and before the hour when the attachments of execution mentioned in the eighth preceding paragraph were served.

10. E. S. Doughty and J. M. Wyatt, the two remaining directors, lived in New York City. . . . They had no timely notice, and could not have been present at the special meeting held November 26, 1894.

11. Subsequently, by powers of attorney duly recorded, R. W. Reynolds, trustee for the bondholders, Robert W. Reynolds, I. S. Case, Morton Decker, Milton Yetter, Hiram Frisbie, Peter Charles, Joseph H. Zacharias, A. W. Knapp, J. H. Shotwell, George E. Stauffer, F. H. Smith, H. H. Teeter, A. W. Loder & Sons, Philip Ruster, E. T. Smith, Joseph Overfield, A. R. Brittain, Seiders & Co., Moses Detrick, D. R. Brown, executor, J. J. Shull, The Bridgeport Brass Company, The F. W. DeVoe and C. T. Raynolds Company, Moller & Schumann, and S. W. Gardner & Co., being all the parties claiming said insurance moneys, nominated, constituted and appointed Rodman W. Reynolds, their attorney in fact, for them and in their names, to ask for, demand and receive from each of the insurance companies above named, the total amount of money due from each by reason of the loss by fire of the property of the said Keystone Fibre Company, insured by said companies, as per their respective policies. . . .

12. R. W. Reynolds, trustee, admits that he has received from all sources, $16,573.39, and the balance for distribution, $15,464.65.

13. After paying the bondholders under the mortgage in full (amounting at date of sale to $12,515), there is a balance of $2,946.65 in his hands, sufficient to cover all claims of the plaintiffs. This balance of money is claimed, on the one hand by the assignees in the alleged assignment, dated November 26, 1894; and, on the other hand, by the plaintiffs in this suit (to the amount of their judgments, interest and costs), who issued the attachments in execution, for the purpose of attaching said insurance money.

14. There was no actual fraud in the execution and delivery of the assignment of November 26, 1894, nor in the amount due the respective creditors named therein.

15. There was no actual fraud in the receipt or acceptance of the said assignment of November 26, 1894, by the creditors named therein.

16. The said assignment of November 26, 1894, has not been used fraudulently or for a fraudulent purpose, by the creditors named therein.

17. The said Keystone Fibre Company was insolvent at the time of the execution of said assignment of November 24, 1894.

### CONCLUSIONS OF LAW.

Following the rule enunciated in Library Hall Co. v. Pittsburg Assn., 173 Pa. 30, we are obliged to say that the assignment, authorized by the meeting of the directors of the Keystone Fibre Company, on November 26, 1894, was voidable. The notice of the special meeting sent to E. S. Doughty and J. M. Wyatt, two of the directors, was insufficient as to time. But, as was ruled in Gordon v. Preston, 1 Watts, 385, can the act of the directors be impugned now, and by a creditor of the corporation? Neither the officers of the corporation, nor the stockholders have objected. They are the only ones who can take advantage of the irregularity, and not the judgment creditors: Gordon v. Preston, supra. Hence we apply to this question the rule, as formulated in the last cited case, that " the maxim, which makes ratification equivalent to precedent authority, is as much predicable of ratification of a corporation as it is of ratification of any other principal, and it is equally to be presumed from the absence of dissent." We, therefore, hold the assignment of November 26, 1894, though voidable originally by the corporation, or its stockholders, must now be taken to have been subsequently ratified, and must now be held valid, as against the plaintiffs who are judgment creditors.

But it is urged that the assignment is a fraud in law on the plaintiffs, because it prefers the creditors named therein. This is not the law, as we understand it. An insolvent corporation may prefer such of its creditors as it chooses: Pairpoint M'f'g. Co. v. Watch Co., 161 Pa. 17; Bank v. Tanning Co., 170 Pa. 1; Werner v. Zierfuss, 162 Pa. 360; Mellon's App., 1 Grant, 212.

Again, it is urged that the assignment is a fraud in law on the plaintiffs, because it prefers two of the creditors, Morton Decker and Hiram Frisbie, who were directors of the corporation at the time of the assignment, and were present at the meeting which authorized the assignment. This objection cannot apply to judgment No. 112, September term, 1894, for $2,641.50, in favor of Robt. W. Reynolds, trustee, etc., because he is trustee for other parties besides Morton Decker; nor to the bonds of Morton Decker and H. Frisbie, secured by mortgage on the real estate, and mentioned in the assignment to Robt. W. Reynolds, trustee, and also secured in the policies of insurance, each of which contains the clause "loss, if any, payable as interest may appear, first to R. W. Reynolds, trustee for the bondholders." But the objection does apply to the judgment of Morton Decker for $1,253.95, No. 110, September term, 1894.

We have found as a fact that there was no actual fraud in the making of the assignment of November 26, 1894, and that the creditors named therein are bona fide creditors of the company. Such being the case we think, the question ruled by Lasher v. Medical Press Co., L'td., 3 Pa. Superior Ct. 571; s. c. 40 W. N. C. 19. . . . We, therefore, hold, under the case cited, that the assignment of November 26, 1894, was not a fraud in law against the plaintiffs. . . .

"But it cannot be said as a correct proposition of law, that officers of a corporation cannot themselves and in their own names contract with it. . . . There is no more equity in allowing an individual debtor to prefer his creditor, wife, or children than in allowing a corporation to prefer its stockholders and officers. . . . If the debt is an honest one, and the corporation had the power to contract it, it has the right to pay or secure it, and no fraud can be imputed to it from the fact that it is paid or secured in preference to another. . . . Preferences are not based on any equitable principle. They go by favor. And, as one individual may prefer among his creditors, his friends and relations, so a corporation may prefer its friends. Brown v. Grand Rapids Parlor Furniture Co., 58 Fed. Rep. 286, 22 L. R. A. 817. See also Worthen v. Griffith, 59 Ark. 562, and cases cited."

It is not the law of this state, as we understand it, that the directors of an insolvent corporation are technically trustees

for its creditors, and are bound to apply the assets ratably among the general creditors, as is the case in some of the states: Dana v. Bank of U. S., 5 W. & S. 223; Roy's App., 169 Pa. 626; East Side Bank v. Tanning Co., 170 Pa. 1; Reynolds v. Lumber Co., 175 Pa. 437. In this respect the decisions of this state and Connecticut are in accord: Dana v. Bank of U. S., 5 W. & S. 247; Catlin v. Eagle Bank, 6 Conn. 233; Pondville Co. v. Clark, 25 Conn. 97; Angell & Ames on Corps. section 770; 6 Am. & Eng. Corp. Cases, 298.

Assuming, however, that we are in error in this view of the law, and adopting the view contended for, that, under the rule laid down in Hopkins's & Johnson's App., 90 Pa. 69, and as modified by Neal's App., 129 Pa. 64, and further qualified in Reynolds v. Reynolds Lumber Co., 169 Pa. 630, and Bank v. Tanning Co., 170 Pa. 9, the assignment was a fraud in law as to the judgment of Morton Decker for $1,253.95, No. 110, September term, 1894, how can this benefit the plaintiff? The remaining creditors covered by the assignment have claims which amount to more than the balance in the hands of Reynolds, the trustee, after payment of the bonds, secured by mortgage, as will appear from the following figures:

| | |
|---|---:|
| Amount in hands of Reynolds, as appear in our statement of facts, | $15,464.65 |
| Due bondholders at date of sale, | 12,515.00 |
| | $2,949.65 |

Amounts named in assignment of November 26, 1894.

| | |
|---|---:|
| George E. Stauffer, mechanic's lien, | $ 834.61 |
| "        "        note, | 1,500.00 |
| R. W. Reynolds, trustee, judgment, | 2,641.50 |
| J. H. Zacharias, judgment, | 1,235.16 |
| J. H. Shull, account, | 500.00 |
| | $6,711.27 |

If we are correct in this conclusion then there was no fund left applicable to the claims of plaintiffs.

Upon all the grounds considered, we must dismiss the bill of plaintiffs and at their costs.

*Error assigned* was decree dismissing bill in equity.

*A. Mitchell Palmer*, with him *John B. Williams*, for appellants.
—The assignment is void for two reasons ; first, because it was
executed at a special meeting of the board of directors which
was illegally held; second, because it was a fraud upon the
creditors of the corporation who were not named therein as
assignees, and especially upon the plaintiffs in this action who
had issued attachments in execution attaching the insurance
moneys, but which attachments at the time of the assignment
had not been served: Kersey Oil Co. v. Oil Creek, etc., R. R.,
12 Phila. 374; Pike County v. Rowland, 94 Pa. 238; Stow v.
Wyse, 7 Conn. 214; Taylor on Corporations, sec. 260; Gordon
v. Preston, 1 Watts, 385.

In the distribution of an assigned estate, a simple contract
creditor, who establishes his claim, has a standing to attack a
judgment given in fraud of creditors: Susong's App., 2 Pa.
Superior Ct. 611; Fowler v. Kingsley, 87 Pa. 449.

If it be true of an insolvent individual that his creditors on a
proper showing of illegality can set aside a judgment, why is
it not all the more true of an insolvent corporation? Warner v.
Hopkins, 111 Pa. 328; Cook on Stock and Stockholders, 938.

Directors of a corporation occupy a fiduciary relation to it,
and they cannot, because they are directors, secure an advan-
tage to themselves not common to other creditors: Hill v. Fra-
zier, 22 Pa. 320; Coal & Iron Co. v. Humes, 157 Pa. 278;
Aultman's App., 98 Pa. 506; Koehler v. Iron Co., 2 Black,
(U. S.), 715; Spering's App., 71 Pa. 23; Neal's App., 129 Pa.
64; Kersteter's App., 149 Pa. 148.

*Charles B. Staples*, with him *John B. Storm* and *Wilton A.
Erdman*, for appellees.—Directors may bind the corporation
by their separate approval of claims when they have been ac-
customed to do so: Longmont, etc., Co. v. Coffman, 19 Pac.
Rep. 508; Sampson v. Bowdoinham Steam Mill Corp., 36 Me.
78; Reed v. Hayt, 109 N. Y. 659; Manhattan Hardware Co. v.
Phalen, 128 Pa. 110.

A creditor in his relation to a corporation stands in no better
position than in his relation to an individual, in other words,
he is but a stranger and, as has been well stated in Cook on
Stocks, etc., and Corporation Law, sec. 735, there is no such
fiduciary relation between the directors and the creditors as

there is between the directors and stockholders; hence many
acts which would be fraudulent or illegal, as against the stock-
holders, are not so as against the creditors: Gordon v. Preston,
1 Watts, 385; Drexel's App., 6 Pa. 272; Manhattan Hardware
Co. v. Phalen, 128 Pa. 117; Bank v. Tanning Co., 170 Pa. 1;
Balliet v. Brown, 103 Pa. 554; Hall v. Publishing Co., 180 Pa.
561; Eppright v. Nickerson, 78 Mo. 482; Brackett v. Griswold,
15 N. Y. Supp. 192.

In Pennsylvania an insolvent corporation may prefer a cred-
itor by a confession of judgment: Pairpoint Mfg. Co. v. Phila.
Optical & Watch Co., 161 Pa. 17; Lasher v. Medical Press
Co., 3 Pa. Superior Ct. 571; Werner v. Zierfuss, 162 Pa. 360;
Dana v. Bank of U. S., 5 W. & S. 223; Reynolds v. Lumber
Co., 175 Pa. 626.

On the question of the right of a corporation to prefer its
own officers the following authorities are cited: Gordon v.
Preston, 1 Watts, 385; Criswell's App., 100 Pa. 495; Mueller
v. Fire Clay Co., 183 Pa. 462; Reed v. Hayt, 51 N. Y. Supe-
rior Ct. 121; Stratton v. Allen, 16 N. J. Eq. 229; Smith v.
Skeary, 47 Conn. 47; Whitwell v. Warner, 20 Vt. 424; Lev-
ering v. Bimel, 45 N. E. Rep. 775; Schufeldt v. Smith, 29 L.
R. A. 830.

The cases upon which the appellants rely, viz: Hopkins's
and Johnson's App., 90 Pa. 69, and Kersteter's App., 149 Pa.
148, do not fit this case. In the Hopkins and Johnson case
the transaction appears to have been without any action on the
part of the directors, but simply for the benefit of the officers
of the company, although it appears in the same case that the
execution of one of the directors was paid in the distribution
of the proceeds by the auditor. In Kersteter's App., the deci-
sion was made on the fact that actual fraud had been committed
by Smithman who, without authority from the board of di-
rectors or from the stockholders, took and appropriated to him-
self the fourteen bonds to which he was not entitled.

OPINION BY MR. JUSTICE MCCOLLUM, October 17, 1898:

The appellants have judgments against the Keystone Fibre
Company amounting to $1,092.83, exclusive of interest and
costs, which judgments they obtained in September and Octo-
ber, 1894. On November 23, 1894, the company's plant was

partially destroyed by fire. There were then eight policies of insurance on the plant, aggregating $13,500, which were issued in March and April, 1894, for the term of one year, and each of the policies bore the following indorsement: " Loss, if any, payable as interest may appear, first to R. W. Reynolds, Trustee for the bondholders." On November 24, 1894, the appellants issued attachments in execution on their respective judgments. The attachments were duly served and the insurance companies were summoned as garnishees. Before the attachments were served the Keystone Fibre Company made an assignment of its interest in the policies to its bondholders and other creditors named therein. The most important, if not the only, question presented on this appeal is whether the assignment is valid. The appellants claim that it is not, because, as they allege, it was not authorized at any regular or duly called special meeting of the directors of the company and, because, as they further allege, it is a fraud upon the creditors of the company who are not named therein as assignees. The learned court below found as a fact that two of the five directors of the company did not have timely notice of the meeting at which the assignment was authorized, and held that on this ground it was voidable, but held also that as no officer or stockholder of the company had made any objection to it, their acquiescence must be accepted as a ratification of it, and cited Gordon v. Preston, 1 Watts, 385, as authority for its conclusion respecting the first objection made to the validity of the assignment. In this conclusion we concur.

The objection that the assignment is in fraud of the credit-ors not named in it was not sustained by the court below, because a corporation, as well as an individual or copartnership, may prefer one creditor to another if the preference is honestly made to secure or satisfy a bona fide debt, and because, further, that the assignment furnishes no basis for an inference of actual fraud in the preference given in this case. No attempt was made by the appellants to show actual fraud in the trans-action, and the court found from the evidence that it was not present. It is not alleged that the assignment was intended to secure the payment of fraudulent claims, or that any assignee named in it demands payment of or has such a claim, and it is conceded by the appellants that the insolvency of the company

is not a bar to or abridgement of its right to prefer one creditor to another.

The fund for distribution is $2,949.95, and it is the balance remaining in the hands of R. W. Reynolds, trustee for the bondholders and "attorney in fact of all the parties claiming the insurance moneys," after paying the bondholders and other creditor or creditors secured by the mortgage and the indorsements on the insurance policies. The learned court below held that the fund was applicable to the debts still due from the company to the persons named in the assignment and that it was not sufficient to satisfy all these debts. Assuming that this view is correct, it follows that each creditor named in the assignment and having an unsatisfied claim is entitled to a pro rata share of the fund. But the appellants contend that, as Frisbie and Decker were at the special meeting and two of the three directors who voted for the assignment, they acquired no preference by it. We think this contention is sound. No case has come under our notice in which a director and creditor of an insolvent corporation has been allowed by his own vote to obtain a preference for his claim over the claims of other creditors. The weight of authority in this country is certainly against such a preference. We therefore hold that Decker as a judgment creditor of the company did not acquire a preference by the assignment over the judgment creditors who are the appellants in this case. The assignment was not necessary for the protection of Frisbie, because his only claim against the company was as a bondholder, and the bondholders, as we have seen, were protected by the mortgage and the insurance.

We cannot sustain the contention of the appellants that the unsuccessful attempt of Decker to obtain a preference by the assignment is fatal to the preferences lawfully created and conferred by it. If the sum for distribution was more than suffi- cient to satisfy the lawfully preferred debts, we would, in accordance with the views herein expressed, reverse the decree appealed from, but as the fund is primarily applicable to such debts, and the court below has found as a fact that it is insufficient to satisfy them there is no occasion or ground for a reversal.

Decree affirmed and appeal dismissed at the cost of the appellants.