## Haslam v. American Auto Club, Inc.

*Corporations—Special meeting of directors—Necessity for notice—Burden of proof.*

1. A certificate of indebtedness of a corporation alleged to have been executed upon authorization of the board of directors is not valid and binding on the corporation, and is not sufficiently proven to sustain a verdict where the evidence shows that the alleged action was taken by the board at a( special meeting, irregularly held without notice, and that at least one director was absent. The burden of proof was on plaintiff to prove that the meeting was properly called and that all the directors had sufficient notice of the meeting and its purpose.

*Corporations—Unauthorized acts of board of directors—Ratification.*

2. The unauthorized acts of the board of directors of a corporation may be ratified by subsequent acts of the corporation.

*Corporations—Capital stock—Purchase of its own stock by corporation.*

3. A corporation's contract to repurchase its own stock, if made in good faith, is not *ultra vires* where it is not forbidden by the charter of the company.

*Practice, C. P.—Trial—Variance—Waiver.*

4. Although it constitutes a variance between the *allegata* and *probata* for the plaintiff to aver in his statement of claim a sale of the assets of a corporation, and at trial prove a sale of its stock, yet an objection on that ground will not be sustained where the affidavit of defence and the witnesses for both sides at trial treated the two words, assets and stock, as synonymous. The pleading could have been amended without the defendants being able to plead surprise, and the court was justified in treating it as amended.

Rules for new trial and for judgment *n. o. v.* C. P. Berks Co., Nov. T., 1921, No. 57.

*George Eves*, for defendant and rules; *W. B. Bechtel*, for plaintiff.

BIDDLE, P. J., 9th judicial district, specially presiding, Aug. 24, 1923.—This was an action in *assumpsit* brought by the plaintiff against the defendant, a Delaware corporation, to recover the amount claimed on a certificate of indebtedness dated Feb. 6, 1920, purporting to be signed by the defendant corporation by R. C. Bennet, its alleged general manager.

The plaintiff had been the owner of one-half of the outstanding common stock of the defendant corporation, and on Nov. 29, 1919, he entered into a contract with Dr. Mary D. Ridgeway, who was the owner of the remaining outstanding common stock, for the sale to her of all of his stock for the sum of $8000. Of this amount $500 was paid by Dr. Ridgeway to the plaintiff, and she gave him her two promissory notes aggregating the remaining $7500. Dr. Ridgeway became dissatisfied with the purchase and refused to carry out the contract with the plaintiff, and, according to his averment, in February, 1920, it was agreed that their contract should be abrogated and the common stock sold to the defendant corporation instead of to Dr. Ridgeway. The plaintiff averred that at a meeting of the board of directors of the corporation, held in the City of Reading on Feb. 6, 1920, the directors, by due action, approved the purchase of this stock by the company and authorized R. C. Bennet, the general manager, to execute the certificate of indebtedness upon which the plaintiff's claim is based.

The defendant filed an affidavit of defence denying the averments of the plaintiff's statement, and averring that the plaintiff had sold the stock to Dr. Ridgeway, and that the defendant corporation had never purchased it and had never authorized R. C. Bennet to execute the certificate of indebtedness. The plaintiff's statement sets up that he was the owner of one-half of the assets of the defendant corporation, and it was the assets of the cor-

poration that had been sold. The affidavit of defence, in denying this, averred that the plaintiff transferred his interest in the assets to Mary D. Ridgeway.

On the trial of the case, the plaintiff was called as the sole witness to support his claim. He offered to prove then that what he sold to the defendant company was common stock of the company. This offer was objected to by the defendant as constituting a variance from the cause of action declared upon; the objection was overruled by the court and the evidence admitted.

The plaintiff testified that there was a meeting of the majority of the directors of the company on Feb. 6th, that no minutes of that meeting were kept, but that the directors authorized the purchase of the stock of the company so that Dr. Ridgeway might be released from her contract with the plaintiff, and that the directors also authorized R. C. Bennet to execute a certificate of indebtedness for the amount to be paid for the stock. Plaintiff gave the names of the directors who, he said, were present at this meeting, and he said that his wife also was present; but none of these other parties were called to corroborate his statement.

For the defence, Dr. Ridgeway was called as the sole witness, and testified in regard to the occurrence. She flatly denied the statement of the plaintiff in regard to the company meeting being held on Feb. 6, 1920, gave the names of different directors as constituting the board of directors of the defendant company, and stated that she had refused to carry out her contract of Nov. 29, 1919, with the plaintiff on account of misrepresentations by him. It was stated by Dr. Ridgeway, and admitted by the plaintiff, that the regular meetings of the board of directors of the defendant company were held on the first Monday of each month, and it was agreed that Feb. 6, 1920, was not the first Monday of that month. Dr. Ridgeway testified that there was no such meeting. The plaintiff, Robert Haslam, testified that there was, but that not all of the directors were present. There was no evidence that those directors who were not present had received any notice of the meeting whatever. No witnesses were called to corroborate Dr. Ridgeway, and no satisfactory explanation of the failure to call them was given by her, just as no satisfactory explanation, indeed, no explanation at all, was given by the plaintiff of his failure to call the witnesses who could have corroborated him.

The sole question submitted to the jury was whether or not the directors had held a meeting on Feb. 6, 1920, at which they had authorized the purchase of this stock of the company, and had authorized the execution of the certificate of indebtedness by R. C. Bennet. The jury returned a verdict in favor of the plaintiff for the amount that he claimed was due at the time of the institution of the suit. The defendant has obtained a rule for a new trial and a rule for judgment *n. o. v.*

After a careful examination of the testimony, we have reached the conclusion that there was not sufficient evidence of a valid meeting of the board of directors of the defendant company on Feb. 6, 1920, to justify the submission of that question to the jury. Plaintiff's statements as to who were the directors at that time were most unsatisfactory and conflicting. He first said he himself was a director at the time, but subsequently admitted that he had formally resigned as a director in November, 1919, and was not a director at the time of the meeting, and he was extremely uncertain as to who the directors in fact were at the time of the meeting which he said was held on Feb. 6th. But even taking his statement as correct, there was at least one director who was not present at that meeting. His testimony was entirely silent as to any notice having been given of the meeting to any of the directors, including the one director who admittedly was not present, and, as we view it,

4 D. & C.

the burden was on him to show that this special meeting was properly called, and that all of the directors had sufficient notice of the meeting and of its purpose.

"In Gordon *v.* Preston, 1 Watts, 385, Gibson, C. J., says: 'When the day has not been fixed by other competent authority, this notice is indispensable to a legal convention for the transaction of even the ordinary business:'" Oil and Mineral Co. *v.* Railroad Co., 5 W. N. C. 144. A meeting of directors which is special must be preceded by notice, and the notice, in the absence of by-laws to the contrary, must be given one full day in advance of the meeting: Gordon *v.* Preston, 1 Watts, 385; Oil and Mineral Co. *v.* Railroad Co., 5 W. N. C. 144; Library Hall Co. *v.* Library Ass'n, 173 Pa. 30; Moller *v.* Fibre Co., 187 Pa. 553.

If this were the only point in the case, we would feel that the rule for judgment *n. o. v.* would have to be made absolute. But from the evidence in the case there was sufficient to justify the jury in finding that, subsequent to the alleged meeting of the directors, the notes that Dr. Ridgeway had given in pursuance of her contract of November, 1919, were returned to her, she being admittedly a director of the company and one of its officers; that she retained these notes without protest; that she had notice of the alleged action of the directors and of the claim of the plaintiff, and made no objection thereto, and that she caused a payment to be made on account of the certificate of indebtedness from the funds of the company. If the jury had found that these conditions actually existed, they might have found that while the alleged meeting on Feb. 6th, and the action taken there, was voidable, the action had been subsequently ratified by this subsequent conduct of the corporation's officers, for the unauthorized acts of the board of directors may be ratified by subsequent acts of the corporation: Gordon *v.* Preston, 1 Watts, 385; Moller *v.* Fibre Co., 187 Pa. 553, 563. So that on this ground we do not feel that the rule for judgment *n. o. v.* should be made absolute.

It is further contended by the defendant that the alleged purchase of the stock by the corporation is invalid as *ultra vires*, and it takes the position that such purchase cannot be sustained. There was no allegation in the affidavit of defence that the corporation at the time it is alleged to have purchased this stock was insolvent, or that the purchase would affect the rights of the creditors, and the attempt of the defendant to show this on the trial was, therefore, properly refused by the learned trial judge. And it has been repeatedly held that a corporation's contract to repurchase its own stock, if made in good faith, is not *ultra vires*, where it is not forbidden by the charter of the company: Hertzler *v.* Federal Equipment Co., 45 Pa. C. C. Reps. 546; Dock *v.* Jute Cordage Co., 167 Pa. 370; Beltz *v.* Garrison et al., 254 Pa. 145.

It was contended with much force and ability by the learned counsel for the defendant that the trial court erred in admitting plaintiff's testimony as to the terms of the contract with the defendant, on the ground that the plaintiff, having averred a sale of the assets of the corporation, should not be allowed to offer evidence of a sale of the stock of the corporation.

There is, as we view it, a material and essential difference between the assets of a corporation and its stock, and if there had not been anything on the part of the defendant to prevent it from raising this point, we think that the objection should have been sustained; but an examination of the pleadings makes it clear that both the plaintiff and the defendant had treated and regarded the two words, assets and stock, as synonymous, because the affidavit of defence specifically avers that what the plaintiff contended he had sold to the defendant corporation, he had in fact sold to Dr. Ridgeway at

a prior date, and the evidence also showed that what the plaintiff had agreed to sell to Dr. Ridgeway was stock of the company and not assets of the company. The case was heard, therefore, on the understanding that the parties themselves had of what was involved, and as the pleadings might have been amended at any time by substituting the word stock for the word assets, the court, we think, was entirely correct in treating it as if this amendment had been made, and as the defendant had shown a thorough knowledge of what the plaintiff meant, we think an allegation of surprise could not have been sustained at the time. As we view it, therefore, the plaintiff is entitled to submit his claim to the jury, basing it, not on the original defective meeting of the board of directors, if there was such a meeting, but on the subsequent ratification of the certificate of indebtedness, which is the basis of his claim.

And now, Aug. 24, 1923, the rule for judgment *n. o. v.* is discharged, and the rule for a new trial is made absolute.

From Wellington M. Bertolet, Reading, Pa.