## PORT CHILKOOT CO. v. HEINMILLER et al.
### No. 5966–A.

United States District Court.  D. Alaska.
First Division.  Juneau.

Dec. 31, 1948.

Davis & Renfrew, of Anchorage, Alaska, and William L. Paul, Jr., of Juneau, Alaska, for plaintiff.

Simon Hellenthal and R. E. Robertson, both of Juneau, Alaska, for defendant.

FOLTA, District Judge.

This is a suit to enjoin the defendants, five of whom are acting or assuming to act as directors, from committing certain acts alleged to be fraudulent and in breach of trust. The complaint alleges a conspiracy entered into in the initial stages of the organization of plaintiff to so manipulate its affairs as to bring about a default in the performance of its operating agreement with the Veterans Alaska Cooperative

Company, and eventual transfer or reversion of title to the five defendants first named for their benefit, in fraud of the stockholders.

Defendants, appearing specially, challenge under Sec. 54-6-3, Alaska Compiled Laws Annotated 1949, the authority of counsel to appear for plaintiff, on the ground that Kenneth P. Gregg had no authority to employ them because his election at the directors' meeting of May 9, 1947, as Secretary-Treasurer and his employment as General Manager which was authorized at the same meeting, were of no effect because the meeting itself was invalid for failure to give notice thereof to two directors; but that, if not, nevertheless the counsel have no authority to appear for plaintiff since the termination of their employment by the Board of Directors on September 25, 1948, sixteen days after this action was commenced. These and other contentions stem from a factional dispute between Edwards, Merrick and Gregg on the one hand, and the defendants Heinmiller, Homer, Cordes, Gregg, Jr., and Trelford on the other, all of whom constituted the original board of directors. The three first named were also elected respectively President, General Counsel, and Secretary-Treasurer.

A brief review of the events leading up to this controversy will facilitate an understanding of the questions involved.

In March 4, 1946, the defendants Heinmiller, Homer, Cordes, Trelford and Gregg, Jr., entered into a joint adventure in Washington, D. C., for the purchase of Chilkoot Barracks at Haines, Alaska, which had been declared surplus by the Federal Government, with the view of establishing various projects for veterans thereon. Their agreement contemplated the organization of a corporation to take title, and accordingly Veterans Alaska Cooperative Company, hereinafter known as Vacco was organized, with the joint adventurers as directors and officers. Later, to facilitate the financing and operation of the properties acquired from the Government in pursuance of the agreement referred to, the

plaintiff corporation was organized with the defendants named as five of its eight directors. A lease was entered into between Vacco and plaintiff for the operation of the property. As might have been expected, their affairs became interwoven because both were subject to the control of a common directorate of whom the five defendants named constituted a majority. There was marked dissension between the minority and majority directors over various matters, and it is upon these that the conspiracy charge is now predicated.

Defendants Cordes and Trelford left Washington in the fall of 1946 to settle at Port Chilkoot, leaving their proxies with the defendant Gregg, Jr. Plaintiff corporation was organized May 8, 1947, at Washington, and the first directors' meeting was held the following day. Edwards was elected President, Merrick as General Counsel, and Kenneth P. Gregg as Secretary-Treasurer and his employment as General Manager was authorized. Defendant Cordes was appointed Deputy Manager of the properties under the direction of Gregg. On May 3, 1947, the defendants Cordes and Trelford executed and delivered their proxies to Merrick, in consequence of which they were not notified of the first directors' meeting at Washington on May 9, 1947.

Defendants contend that this omission not only invalidated the meeting but whatever action was taken there, and in particular the appointment of Gregg as Secretary-Treasurer and the authorization for his employment as General Manager, from which it is argued that the employment by him of counsel in this case is likewise invalid. The defendants further contend that the by-laws, Plaintiff's Exhibit No. 2, upon which plaintiff relies, were never adopted at the organization meeting in Washington on May 8, 1947, or subsequently, and that for that reason also the acts of the directors and officers were without authority. In this connection, however, it should be noted that no one objected to or attacked the action taken, and the officers of the plaintiff corporation

were recognized by all as such until the majority directors, at a meeting held in Alaska on October 3, 1947, purported to remove the officers named and elect their successors from among themselves.

The defendants Heinmiller, Homer and Gregg, Jr. followed the defendants Cordes and Trelford to Alaska until by the late summer of 1947 all the majority directors had established themselves on the leased property while the minority, consisting of Edwards, Merrick and Gregg, remained in Washington. Relations between them had not only not improved but, if anything, had become more strained. Whether this had anything to do with the continued maintenance of the principal office at Washington, or whether it had been contemplated that the project should be managed locally under the general supervision of the officers in Washington for a time, does not appear. But in view of the differences which developed, it is not surprising that no move was made to change the status quo until the majority directors on September 23, 1947, twelve days after the arrival of the defendant Heinmiller at Port Chilkoot, suspended all local operations pending a meeting of the directors at Port Chilkoot on October 3rd. The business to be transacted, however, was not stated in the notice as required by the by-laws, and the meeting was held without the presence of the minority directors in Washington. They were removed as officers, and the defendant Heinmiller was elected President-Manager, and the defendant Cordes as Vice President-Treasurer. There was another meeting of the majority directors on March 31, 1948, for the purpose of ratifying their action taken at the meeting of October 3rd, and a stockholders' meeting on May 5, 1948, at Port Chilkoot for the same purpose and the additional purpose of electing a new board of directors, which on September 25, 1948, passed a resolution terminating the employment and authority of counsel for the plaintiff.

Plaintiff contends that these meetings were held to accomplish the object of the conspiracy referred to, and that the

directors' meeting of October 3rd was invalid for the reason that there was a failure to state in the notice the business proposed to be transacted and that in the meantime, before the action there taken could be ratified at the directors' meeting of March 31, 1948, and stockholders' meeting of May 5, 1948, the majority directors had been removed and could not thereafter lawfully call either of the subsequent meetings or transact any business as officers or directors.

In the meantime on October 20, 1947, the minority directors called a special stockholders' meeting at Washington for November 20th for the purpose, among others, of inquiring into the actions of the majority directors and, if the evidence warranted, removing them and electing their successors, and at the adjourned meeting of November 23, 1947, formal charges were preferred against the majority directors and they were removed. The institution of this proceeding was also authorized at that meeting. Another adjourned meeting was held on December 10, 1947, at which a new board of directors was elected.

No notice of the meeting of November 20th was sent to the stockholders Regina Guyer and Mimi Gregg.

The determination of the principal question as to the authority of counsel for plaintiff involves a consideration of the validity of the several directors' and stockholders' meetings and the action there taken.

In passing upon these and related questions effect must be given to the rule that where two corporations have a common directorate, Courts will closely scrutinize transactions between them and regard the directors as trustees of the stockholders of each. Here the directors of Vacco not only constituted a majority of plaintiff's board, but they are charged with conspiracy to obtain control of and title to the property by fraudulent means for their own benefit. Substantial support for this charge appears in the evidence, not the least of which consists of contemporaneous state-

ments, concerning the acts and attitude of the majority directors, which were made by plaintiff's officers long before there could have been any motive to misrepresent or to make self-serving declarations.

## By-laws

■ The Court finds that the evidence amply sustains plaintiff's contention that the by-laws introduced as Plaintiff's Exhibit No. 2 were adopted at the organization meeting of May 8, 1947.

## Directors' Meeting of May 9, 1947

■■■ As has already been pointed out, the defendants Cordes and Trelford left for Port Chilkoot, Alaska, in the fall of 1946. They, with the six others, were named as the board of directors in the articles of incorporation. On May 3, 1947, defendants Cordes and Trelford executed proxies in favor of Director Merrick, who was also General Counsel of the corporation, in consequence of which no notice of the first meeting of directors at Washington on May 9, 1947, was sent to either of them. However, the other directors, including the defendants, sometimes referred to herein as the "majority directors" and the "director-defendants", are in no position to assail the validity of this meeting because the validity of their own subsequent acts rests on the action taken there. Moreover, there were several other meetings of the directors. They knew that no notice had been given to Directors Cordes and Trelford and that Merrick held their proxies. Yet they not only did nothing to attack or repudiate any action taken there, but on the contrary their entire course of conduct since then, as well as that of the corporation, warrants a finding of ratification by acquiescence. Thus the authority of the President and the General Manager was recognized and the validity of their acts unquestioned until October 3, 1947, when the majority directors attempted to remove the officers elected at the first board meeting and elect two of their number instead. The

defendant Cordes himself acted as Deputy Manager at Port Chilkoot under the direction of General Manager Gregg.

■ In determining the validity of this meeting the Court is governed not so much by the degree of formality observed but rather by the practical and legal effect of the action taken in view of the surrounding circumstances. So viewed, the Court concludes that the directors' meeting of May 9, 1947, although voidable, was ratified by acquiescence. Fletcher Cyclopedia Corporations, Sec. 429; Moller v. Keystone Fibre Co., 187 Pa. 553, 41 A. 478; Hibernia Savings & Loan Society v. Belcher, 4 Cal.2d 268, 48 P.2d 681, 684, 685; Doehler v. Real Estate Board, 150 Misc. 733, 270 N. Y.S. 386, 405.

## Directors' Meeting of October 3, 1947

Twelve days after the arrival of the defendant Heinmiller at Port Chilkoot from Washington the operations of plaintiff were ordered suspended by him and the other four director-defendants, pending a meeting of the Board called for October 3, 1947, at Port Chilkoot. Although notice was given, there was a failure to state the business proposed to be transacted as required by Section 6, Article 2, of the by-laws, and at the meeting the majority directors "removed" Edwards as President and Gregg as Secretary-Treasurer. Merrick had already resigned as General Counsel because of the strife and dissension referred to.

■■ That the business proposed to be transacted was of such a vital nature as to vitiate the meeting and the action there taken where there was a failure to specify it is obvious, and the Court so holds. That this became apparent to the defendants is attested by their attempt to have their acts ratified at the meeting of March 18, 1948, at Port Chilkoot. But in the meantime the minority directors called a special meeting of the stockholders for November 20, 1947, at Washington to deal with the situation which had developed.

■

210

### Special Meeting of Stockholders
### of November 20, 1947.

President Edwards called a special meeting of the stockholders at Washington for November 20, 1947. The notice stated that the business proposed to be transacted, among other matters, was to inquire into the acts of the majority directors and to remove them and elect their successors. On November 23rd an adjourned meeting was held at which formal charges were preferred against the five director-defendants and considered, and they were removed. The institution of this legal proceeding was also authorized, and at the adjourned meeting of December 19, 1947, new directors were elected to fill the vacancies.

The validity of this meeting is assailed on the grounds (1) that no notice was given to stockholders Regina Guyer and Mimi Gregg, (2) that a majority of the stock was not represented at the meeting, (3) that a special meeting of stockholders outside of the Territory was unauthorized, and (4) that the stockholders were not empowered to remove the directors.

■ (1) The evidence shows that Regina Guyer took advantage of the offer of rescission made to subscribers, pursuant to the order of the Securities and Exchange Commission, by converting her subscription into a loan to Vacco and, hence, became a creditor of Vacco rather than a stockholder of plaintiff.

■ Failure to notify Mimi Gregg appears to be an oversight but, since she has not complained or shown that she was injured, the defendants are not in a position to complain on this score. Fletcher Cyclopedia Corporations, Sec. 2011. Beecher v. Marquette & Pacific Rolling Mill Co., 45 Mich. 103, 7 N.W. 695–697.

■ (2) The objection that a majority of the stock was not represented is apparently based on the contention that each of the five director-defendants owned 200 shares

of stock. While it is undisputed that it had been agreed that they should receive 200 shares of stock each for promotional services, the stock was never issued because of the acts and attitude of the five director-defendants which the officers interpreted as evidence of the conspiracy alleged. See Plaintiff's Exhibit No. 4. The evidence further shows that according to the records of plaintiff 477 shares out of 492 shares outstanding were represented at the meeting. Conceding that the stockholders were not empowered to forfeit defendants' qualifying shares of stock, the addition of such shares to the number of shares shown as outstanding would not change the result. Otherwise the records of the corporation govern on the question of who was entitled to vote. Section 4, Article V of the by-laws. 13 Am.Jur., Corporations, Sec. 486, 490. The Court, therefore, finds that a majority of the stock was represented at this meeting.

■ (3) Section 3, Article 1, of the by-laws authorizes the holding of special meetings outside of the Territory. Under the conditions which existed, with the principal office at Washington as well as the owners of a majority of the stock, the Court holds that this meeting, held only a few months after the organization of plaintiff, was not unauthorized because held outside of the Territory.

■■ (4) There seems to be little merit in the contention that only the Court may remove directors. This proposition appears to be based on Sec. 36-1-94, Alaska Compiled Laws Annotated 1949, vesting the power of removal of directors in this Court. Such statutory power, however, is not exclusive. Fletcher Cyclopedia Corporations, Sec. 359. The power to remove a director for cause inheres in every corporation. Fletcher Cyclopedia Corporations, Sec. 351; Abberger v. Kulp, 156 Misc. 210, 281 N.Y.S. 373, 376. Provision for the exercise of this power was made by Section 10, Article 2, of the by-laws which authorize the removal of any director with or without cause. The defendants took office subject to this provision and are bound thereby.

212

■ The Court concludes, therefore, that the meeting of November 20, 1947, as well as the adjourned meeting thereof, together with the action taken there, were valid.

■■ Defendants further contend that irrespective of the legality or illegality of the meetings held at Fort Chilkoot or Washington, the annual meeting of the stockholders held at Fort Chilkoot May 5, 1948, at which a new board of directors was elected, superseded any action theretofore taken by the board of directors or the stockholders. But this proposition is untenable because the meeting of May 5, 1948, was not called by the directors or officers of the corporation, and moreover the majority of the stock entitled to vote according to the books of the corporation was not represented. Where the statute or by-laws are silent as to who shall call or give notice of a meeting of stockholders, the rule is that it must be called by the directors or the President or General Manager. Fletcher Cyclopedia Corporations, Sec. 1997. From this it follows that the action of the Board of Directors elected at that meeting in passing the resolution of September 25, 1948, terminating the employment and authority of counsel, was of no effect.

■ The resolution adopted at the stockholders' meeting of November 23, 1947, Plaintiff's Exhibit No. 5, authorized the institution of legal proceedings against the defendants. Gregg, as General Manager of the corporation, was clearly authorized to act thereon, regardless of whether he was such de facto or de jure. Accordingly, the Court concludes that the employment of counsel and their authority to appear here are valid.