In re LAPLUME CONDENSED MILK CO.

(District Court, M. D. Pennsylvania. May 31, 1906.)

No. 589.

BANKRUPTCY—POWERS OF COURT—ORDER REQUIRING PAYMENT OF MONEY TO
TRUSTEE.

The treasurer of a bankrupt corporation cannot be required by a summary order to turn over to the trustee money which he in fact paid out in settlement of debts of the corporation between the filing of the petition and the adjudication, even though such payments were not justified and resulted in preferences to the creditors receiving the same.

In Bankruptcy. Rule on M. P. Cawley to turn over money.

W. N. Leach and R. W. Rymer, for the rule.

C. A. Van Wormer, contra, for respondent.

ARCHBALD, District Judge. This case is ruled by American Trust Co. v. Wallis, 11 Am. Bankr. Rep. 360, 126 Fed. 464, 61 C. C. A. 342, decided by the Court of Appeals of this Circuit. It was there held that where a bankrupt, after the filing of a petition against him and pending an adjudication, collected in money which was due, and paid the same out to various creditors, he could not be required by summary order, there being no question of fraud or bad faith, to turn over to the trustee subsequently chosen the funds of which he had so disposed. See, also, In re Smith Longbottom & Sons (D. C.) 142 Fed. 291. In the present instance the respondent M. P. Cawley, treasurer of the bankrupt corporation, in conjunction with the other officers, after the destruction of its condensary by fire and the abandonment of its business, collected the insurance due on its policies, amounting to $14,200, and reduced to money its other available assets, obtaining in this latter way some $5,000 more; the greater part of all of which was paid out again to various creditors. On February 2, 1905, however, when the proceedings in bankruptcy were instituted, the respondent still had in his hands as treasurer, the sum of $3,468.05, of which, at the time when the schedules were filed, there was but $60.53, the rest of it having been disposed of in payment of other indebtedness, notwithstanding the pendency of the proceedings. Of this, $1,590.64 was paid to the creditors who instituted the proceedings in the hope of securing a discontinuance, the respondent taking an assignment of their claims to himself individually, when this proved of no avail. Some $1,126.76 was used in settlement of suits

brought by parties who had contracts for supplying the condensary with milk, on which judgments had been obtained before a justice of the peace, and appeals taken; the respondent and other directors becoming bail absolute therein. Three hundred dollars were paid to counsel for advice and services. And certain debts were taken care of with the rest of it, the most of which were compromised at 35 cents on the dollar. The respondent no longer having the money, and having accounted for it in this way, the question is whether he can be required by summary order to make it good. Except as it is otherwise provided by the bankruptcy act, the payments so made by the respondent, as treasurer, were entirely lawful and justified. They were in liquidation of the company's obligations, and although some creditors may have been preferred at the expense of others, there is nothing in the general law which stands in the way of this, even in the case of an insolvent corporation. Moller v. Fibre Co., 187 Pa. 553, 41 Atl. 478. Nor is this affected by the fact that as to some of the indebtedness, the respondent and other officers had become bound as sureties for its payment. The obligations so entered into in behalf of the company were voluntary, and there was nothing in law or morals which compelled them to stand by and let them become absolute to their personal detriment. It would perhaps have been more just to have divided the assets ratably among the creditors generally, but business has not yet become altruistic, and they certainly cannot be charged with fraud or bad faith, because in paying some of the debts they took care also of their own interests. The bankruptcy law, however, changes this, and for the purpose of securing equal distribution for bids preferences, making them voidable under some circumstances, and subjecting the debtor to proceedings, where they have been given. But notwithstanding this, and conceding that it may be defeated, if an alleged bankrupt in the face of such proceedings may go on and dispose of his property in disregard of them, the filing of an involuntary petition does not, ipso facto, take from him his dominion over it. It no doubt puts the property within the control of the court, if it sees fit to exercise the power, but pending and prior to an adjudication, it is still his own, title only vesting in the trustee, as of that date, after an adjudication has been obtained. Section 70 (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]). If this is not sufficient to protect the interests of creditors, in any case, upon a proper showing they may have the marshal put in possession or a receiver may be appointed, which will. Section 2, subsecs. 3, 5 [U. S. Comp. St. 1901, p. 3421]; section 69 [U. S. Comp. St. 1901, p. 3450].

Subject then to the right of the trustee to avoid it as a preference, an honest disposition of his property by the bankrupt, even after proceedings have been instituted, therefore stands. This is the substance of the decision in American Trust Co. v. Wallis, supra, and is unquestionably the law. Applying it to the case in hand the result is clear. The respondent under the authority which he possessed as treasurer dispensed the money in his hands in payment of the admitted debts of the company. Some were satisfied in full, while in

a few instances favorable reductions were secured. It is now sought to make him personally answerable for this money; not by suit, upon the ground that it was unwarrantably paid out, with the ordinary incidents of execution, etc., in case a judgment should be recovered; but by summary order of court, for disobedience of which he may be attached and committed, for contempt. It is not pretended that the money sought to be reached is actually in his possession, or control, nor is any concealment or subterfuge alleged, or if it is, it has not been made out. All that is contended for is that it shall be treated as constructively in his hands; that is to say, that he shall be held, as though it were, because it ought to be. But this is a misconception of the remedy invoked, and the power of the court under it. It is effective to lay hold of a specific fund or thing, under the dominion or control of the party ruled, but cannot legitimately go beyond that. Undoubtedly the court will not permit a colorable evasion, and that which is held by another, in his interest, or with his connivance, is the same as though held by the party himself. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. An adverse claim on the other hand made in good faith on what is apparently a sufficient basis, will be respected, and, subject always to the right to determine whether it is so made, the court will not undertake to override or pass upon it. It is true that there are cases where a party has been required to disgorge funds which are traced into his hands, notwithstanding his protest that he has spent them in payment of debts, or has otherwise disposed of them. In re Gerstel, 10 Am. Bankr. Rep. 411, 123 Fed. 166; In re Michael Kane, 10 Am. Bankr. Rep. 478, 125 Fed. 984; Schweer v. Brown, 12 Am. Bankr. Rep. 178, 130 Fed. 328, 64 C. C. A. 574; In re Henderson, 12 Am. Bankr. Rep. 351, 130 Fed. 385. But the orders there made proceed upon an entirely different basis, and are carefully to be distinguished. The statement of the bankrupt was simply not believed, and was therefore disregarded. They are not to be construed as undertaking to compel him to turn over what he has not, but what the court finds, notwithstanding his denials, that he in fact has.

The order which is here sought is not within any of these bounds.

As already stated, the respondent, rightly or wrongly, has no money or property of the company in his hands, practically the whole of it, as is clearly shown by the evidence, having been paid out to creditors. The preferences so given are not likely to go unquestioned, and made as they were in the face of bankruptcy would seem to be indefensible, upon action being taken by the trustee. The attempt to get rid of the petitioning creditors, and the assignment of their claims to the respondent are of no particular moment except as they may justify suit against him as the real party who obtained the preference, which he assumed to be. But his liability as treasurer, here and now, upon this or any other ground, to turn over money which he has not got, is another matter, and cannot be sustained.

The rule to show cause is discharged, with costs.