## GUNTHER v. HOME INS. CO. et al.

(District Court, D. Montana. November 18, 1921.)

No. 302.

1. Bankruptcy ⊂⊃293(1)—Bankruptcy court has jurisdiction of any proceeding to recover property of estate taken from its constructive possession.

A court of bankruptcy *held* to have jurisdiction of an ancillary suit by a trustee, based on the alleged conversion and concealment by bankrupt and the other defendants of assets of the estate, which were in possession of bankrupt at the time of the filing of the petition against him, and thus passed into the constructive possession of the court.

2. Bankruptcy ⊂⊃117(2)—All parties to concealment of property by bankrupt are liable to estate.

While a bankrupt, between the filing of a petition against him and adjudication, may maintain suits and may settle the same, any proceeds received by him he holds as trustee for his creditors, and where he converts or conceals sums received by him in settlement of suits, both he and any party making payment with reasonable ground to believe that he intended such conversion are liable to the estate therefor.

3. New trial ⊂⊃76—Verdict, not sustained by evidence showing liability of all defendants, set aside.

In an action against a number of defendants, whose liability depended on different facts, a directed verdict for plaintiff *held* not sustained by the evidence as to some of the defendants, which necessitated the granting of a new trial.

At Law. Action by Charles Gunther, trustee of the estate of Marion A. Bullyon, bankrupt, against the Home Insurance Company of New York and others. On motion by defendants for new trial. Granted.

Binnard & Rodger, of Butte, Mont., and Todd, Fosnes & Sterling, of St. Paul, Minn., for plaintiff.

Nolan & Donovan and Frank & Gaines, all of Butte, Mont., for defendants.

BOURQUIN, District Judge. Defendants move for a new trial. At the conclusion of plaintiff's case in chief, defendants' motions for a directed verdict were denied, and plaintiff's granted. The complaint sounds in conversion or detinue, though in essentials it is analogous to ancillary proceedings to compel accounting for trust property in custodia legis, with which defendants assumed to deal and dispose.

Plaintiff is trustee of an estate in bankruptcy owning the property, and defendants are Bullyon, the bankrupt, who was not served with process, five insurance companies, which issued to him fire policies on his merchandise, Frank & Gaines, their counsel, and Maury & Melzner, Bullyon's sometime counsel. Of the complaint it suffices to say it alleges that the policies issued; that the merchandise burned; that in this court involuntary proceedings in bankruptcy were instituted against Bullyon; that suits were commenced on the policies; that defendants had knowledge of the bankruptcy proceedings pending and reasonable cause to believe Bullyon would conceal from his estate in bankruptcy any moneys paid him; that with intent to aid him therein

and to benefit themselves they settled policies and suits; that Bullyon was adjudicated bankrupt, and plaintiff appointed trustee of his estate; that defendants conceal the terms, proceeds, and property of the settlement from plaintiff. All answers deny the settlement, reasonable cause to believe, intent, possession, and concealment alleged, and those of the companies also deny knowledge of the bankruptcy proceedings.

[1] There is no diverse citizenship, and defendants object to jurisdiction, contending that in the circumstances it is not granted by sections 23, 60, 67, or 70 of the Bankruptcy Act (Comp. St. §§ 9607, 9644, 9651, 9654). Be that as it may, jurisdiction exists by virtue of the principle that, when property is drawn into the jurisdiction and possession of a court for purposes of administration of it, there is, independent of statute, necessarily inherent incidental power in the court to hear and determine all questions respecting the property, and including accounting for it, either summarily or by subordinate and ancillary suit. It would be intolerable if a court, having property in administration and deprived of it, must suspend proceedings until its officer recovers it through the medium of other courts. The policies and credits they represented were in Bullyon's possession when the bankruptcy proceedings were instituted, from which time they were in custodia legis, in the jurisdiction and possession of the court; Bullyon a trustee thereof. See Murphy v. Hofman, 211 U. S. 568, 29 Sup. Ct. 154, 53 L. Ed. 327; Babbit v. Dutcher, 216 U. S. 113, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Bailey v. Co., 239 U. S. 276;[1] Fairbanks v. Wills, 240 U. S. 649, 36 Sup. Ct. 466, 60 L. Ed. 841. In re Denson (D. C.) 195 Fed. 854.

[2] Defendants object to the sufficiency of the complaint, in that, in the interval between bankruptcy proceedings instituted and adjudication, a bankrupt in respect to his property has power to conduct suits, and as a corollary to settle and conclude them. This will be granted. Johnson v. Collier, 222 U. S. 539, 32 Sup. Ct. 104, 56 L. Ed. 306. But the bankrupt's property is a trust fund for all creditors, and the bankrupt a trustee thereof. In consequence he and it are subject to the law of trusts and to the principles of equity applicable to trusts. Amongst these is that he and all parties dealing with him in respect to the trust property are bound to the utmost good faith and fair dealing; and though he have power to dispose of the trust property, if he does so to misappropriate the proceeds, the purchaser and all others with reasonable grounds to believe he intends misappropriation, who aid therein, are participators in his breach or devastavit, and equally with him liable to reimburse the beneficiaries. See Smith v. Ayers, 101 U. S. 328, 25 L. Ed. 955. In Montana these principles are statute law, and both impose upon such purchaser and others to "at their peril see to the proper application of money or other property paid or delivered" to the trustee—create them involuntary trustees, liable to account as such. Clearly enough Bullyon can be compelled herein to account for his breach of trust, and his codefendants are in no better case. The complaint states a cause of action.

[3] Defendants further contend, and truly, that the evidence does not sustain the verdict. Aside from admissions in the pleadings, plain-

[1] 36 Sup. Ct. 50, 60 L. Ed. 275.

tiff contented himself with admissions made by the individual defendants upon their examination before the referee in the bankruptcy proceedings, oral examination of Frank to produce the policies, receipts and money drafts of the settlement, stipulations for dismissal of the suits, Frank & Gaines' letter to counsel for petitioning creditors in bankruptcy, and their answer.

Upon objection, the admissions were limited to the maker, there being no offer to prove, then or later, that the alleged conspiracy or concert continued at the time of the admissions, nor that partnerships existed between Frank and Gaines, and Maury and Melzner, as later developed in the proof. There is no evidence that whatever Bullyon retained of the settlement proceeds was not by him delivered to plaintiff. In consequence the evidence wholly fails in respect to some defendants. Although defendants' motions for verdict contain the usual stereotyped "failure of proof," this anomalous state of the evidence and its deficiencies were not suggested, and it was assumed that, if the law was with plaintiff, the facts were proven.

In respect to all defendants the facts are proven as follows: Before and at the settlement they had knowledge that the policies issued, merchandise burned, bankruptcy instituted, Bullyon answered, Maury his counsel, suits on the policies by Bullyon, Maury his counsel, answers by the companies, Frank & Gaines their counsel, settlement of policies and suits for $4,000, and, later, that Bullyon was adjudicated bankrupt and a trustee appointed. In addition Frank's admissions are that before the fire for a debt Bullyon issued him a check, subsequently dishonored; that he next saw Bullyon under arrest for arson, in the county attorney's office and in jail; that Bullyon was and is accused by the companies and Frank of burning his merchandise; that Bullyon evaded notice to submit to examination in respect to the fire, merchandise, accounts, and books, and concealed himself; that Bullyon permitted sale on executions of the unburned merchandise, neglected to secure $600 surplus in the justice's hands, Frank "tipped off" creditors' counsel, so they might get it, and finally told Bullyon, whose counsel got it; that on November 9, 1918, Frank knew he would be "forced" to try the suits the following Monday, and that the bankruptcy proceedings were for trial two days later; that in the evening of the 9th (Saturday) Bullyon and Maury came to Frank's office and settled policies and suits on Frank's terms, viz. $4,000—Frank to retain $140 for an attaching creditor which he subsequently paid to plaintiff, $285 due local agents for premiums on the policies, and about $175 due Frank for the dishonored check; that he and Bullyon got the money at a bank open evenings, and he gave Bullyon $3,400, perhaps in Maury's presence.

Maury's admissions are that, in discussion of settlement, Frank insisted Bullyon burned the merchandise; that he was at the settlement, and had the policies; let Bullyon have them to receipt upon them for the money and give to Frank (Maury signed the receipts as witness); that Bullyon did his own "agreeing" with Frank, Maury remaining in another room: that he heard "dickering," but did not know terms nor amount Bullyon actually received; that when Bullyon re-

ceived the money, he and Maury went to the latter's office, and out of the proceeds Bullyon paid Maury part due him for services in the suits; that he was paid nothing for services in the bankruptcy proceedings, and did not attempt to collect for them; that what he (Maury) received is privileged, and will not be disclosed; that after adjudication Bullyon was several times in his office, but Maury did not advise him of the necessity to file schedules and to attend the creditors' first meeting; and that Bullyon left, but where he went is privileged and will not be disclosed (he did disclose this when the referee overruled the claim of privilege). The admissions of Gaines and Melzner indicate they knew little of the transactions, Frank and Maury acting therein.

In view of the limitations and deficiencies of this evidence, it is clear that the verdict in no part can stand against the companies, Gaines, and Melzner. So far as they are concerned, the gist of the proceedings, viz. that Bullyon misappropriated from plaintiff and withholds any of the proceeds of the settlement, and that defendants paid the proceeds to Bullyon with reasonable cause to believe he would thus violate his trust, is wholly unproven. Before a participant can be held, there must be proof of a principal delinquent. Generally speaking, the companies are bound by the knowledge had, acts done, and admissions made by their counsel during the transactions including the settlement; but this cannot be proven by counsel's admissions after the transactions are concluded, after the settlement. And if it be assumed that Frank's admissions, with other evidence competent against him, suffice to warrant the inference that he had the alleged reasonable cause to believe, it cannot be imputed to the companies, because his admissions, as received herein, made when they were, are incomptent against them. And for the same reason the companies are not chargeable with the portion of the trust fund retained by Frank in the settlement, the only misappropriation and withholding proven against any defendant. So, too, Frank's and Maury's knowledge, acts, and admissions are their partners', but cannot bind Gaines and Melzner herein, because of the objections and limitations when received in evidence as aforesaid. It would, perhaps, have been a simple matter to have secured herein affirmance from the witness stand of all these admissions by the makers, thus rendered competent against all defendants, or otherwise to prove the facts of them. So far as Frank is concerned, if the sufficiency of the evidence to warrant the inference aforesaid against him be assumed, it can serve as a basis for relief only when there be competent proof against him that Bullyon withholds the $3,400 paid him by Frank, and there is none. The inference, however, is not necessary in respect to the $600 Frank withheld in the settlement, and $460 of which he yet withholds from plaintiff. He received it charged with knowledge that it was in violation of Bullyon's duty and a devastavit in respect to a trust fund.

In respect to Maury, on familiar principles he is entitled to reasonable compensation for his services in the suits and settlement, payable out of the fund recovered, provided his conduct does not render the allowance inequitable. If he received more, the plaintiff can recover

it herein. Maury's admissions are not distinguished by candor—are inclined to evasion and inconsistency, perhaps less with themselves than with reasonable inferences. However, taken by themselves and without consideration of Frank's, as they must be, they do not warrant a finding that he agreed or knew that Frank, as a condition of the settlement, was withholding part of the trust fund or settlement proceeds.

And in respect to Maury, as to all other defendants, no proof that Bullyon withholds any proceeds of settlement that Maury left him, renders unnecessary inquiry whether Maury had the alleged reasonable cause to believe he would withhold them. Maury's claim of privilege in the matter of his compensation is not maintainable; and as in accounting it is his duty to disclose, were these proceedings avowedly in accounting, as they are in essence, it may be the principle of the ring and missing stone would hold him liable for the $3,400 Bullyon had when he entered Maury's office, departing with an undisclosed less amount.

It follows that a new trial must be and is granted to all defendants, save to Frank in respect to the $460 he withholds. In his admissions he disclaims any desire to retain the $175 for his own benefit, but asserts that the $285 for the premiums were properly withheld. The inference is that the local agents, as common, gave Bullyon time to pay the premiums, they paying the amount to the companies when issuing the policies. In these circumstances the local agents became creditors of Bullyon of the same class as others, not entitled to any preference, and Frank improperly retained the amount for them. At any rate, Frank failed to prove the premiums were a debt and set-off to the companies.

It is believed that, in view of the real character of the issues and proceedings involved, defendants may be found liable for different amounts, some severally, some jointly; that the disclosed severance and apportionment or division of the trust fund sufficiently converts the $460 into a separate issue, so that in respect to it a new trial may be denied to Frank, though granted to all other defendants, and a new trial granted to all defendants in respect to all other of the fund.

Order accordingly.