## GERBER & COMPANY, INC. *vs.* THE FIRST NATIONAL BANK OF BRIDGEPORT.

Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 31st, 1929—decided January 31st, 1930.

*Jonathan Grout,* for the plaintiff.

*William H. Comley,* for the defendant.

HINMAN, J. On November 1st, 1923, the plaintiff, a New York corporation, agreed to sell and The National Grain Corporation, which had a principal place of business in Bridgeport, agreed to buy, seventy cases of cheese, to be procured by the plaintiff from Switzerland and delivered to the buyer at dock in New York City. The seventy cases were shipped from Switzerland to the plaintiff as part of a lot of one hundred and fifty cases of the same description, and the shipment arrived at the dock in New York November 20th. On November 22d, at noon, a petition in bankruptcy was filed in the United States District Court, in Connecticut, against The National Grain Corporation. At that time the seventy cases had not been separated from the lot of one hundred and fifty, but between 1.19 and 1.50 p. m. of the same day an agent or employee of the Grain Corporation called at the dock and selected seventy cases of cheese from the shipment, and later transported them to the warehouse of

the Merchant Refrigerating Company, in New York, delivered them for storage, and received a negotiable warehouse receipt therefor.

The National Grain Corporation carried a checking account with the defendant, The First National Bank of Bridgeport, which account was overdrawn in the sum of $1663.79 at the close of business on November 22d, 1923, and the bank had no security for the overdraft. The next day, November 23d, the bank accepted a negotiable note for $1516.12 signed by the Grain Corporation by its treasurer, credited that sum to the overdrawn account and, to secure the note, received, by assignment by indorsement of the company by its treasurer, the warehouse receipt covering the seventy cases of cheese. On the same day, Edmund S. Wolfe, who was president and a director of the bank, and a director of the Grain Corporation, was appointed and qualified as temporary receiver in bankruptcy of the corporation. About two days later the plaintiff demanded of the bank the surrender of the warehouse receipt and the redelivery of the cheese, but was refused. Upon the above-mentioned petition the Grain Corporation was adjudged bankrupt on January 14th, 1924.

The questions reserved call for a determination whether (1) the trustee in bankruptcy, or (2) The National Grain Corporation, or (3) the defendant bank by the negotiation to it of the warehouse receipt, acquired title, as against the plaintiff, to the property described in the stipulated facts, and (4) is the defendant, as against the plaintiff, entitled to retain the sum ($1844.38) received by the defendant from the sale of the cheese?

The contention of the plaintiff is that the Grain Corporation's rights under the executory contract for the purchase of the cheese passed to the trustee of the

bankrupt estate, when appointed, as of the moment of the filing of the involuntary petition; that, at the time, later in the same day, of the separation and delivery of the property, the corporation had no contract right thereto or therein, and that title did not pass either to the corporation or the trustee in bankruptcy but remained in the plaintiff; and it seeks in this action to follow the goods into the hands of the defendant bank and recover from it the proceeds of the sale thereof made by agreement of the parties.

Section 70 of the Bankruptcy Act provides that "the trustee of the estate of the bankrupt, upon his appointment and qualification, . . . shall . . . be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all . . . (5) property which prior to the filing of the petition he could by any means have transferred." The property so vesting in the trustee includes the rights of the bankrupt under an executory contract to purchase. *Planters' Oil Co.* v. *Gresham* (Tex. Civ. App.) 202 S. W. 145, 42 Am. B. R. 29. "Under the previous law [Act of 1867, § 14, 14 U. S. Stat. at Large, p. 522, R. S. (2d Ed., 1878) § 5044], the trustee's title vested by relation as of the date of the commencement of the proceeding. This cast doubt on the validity even of *bona fide* transactions between petition filed and adjudication; in short, made business by an alleged, but not yet adjudicated, bankrupt practically impossible. Under the Act of 1841, there seems to have been a similar doubt. The words 'as of the date he was adjudicated a bankrupt' seem to have been inserted to meet these difficulties. They are not antagonistic to the words found later in subdivision (5). The former refer to the time of vesting; the latter to what vests. . . . While it is true that by subsection *a*

the trustee, upon his appointment and qualification, becomes vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, there are other provisions of the statute which evidence the intention to vest in the trustee the title to such property as it was at the filing of the petition, the estate being considered as being *in custodia legis* from that time." 2 Collier on Bankruptcy (13th Ed.) p. 1635; *Acme Harvester Co.* v. *Beekman Lumber Co.,* 222 U. S. 300, 32 Sup. Ct. 96. "A trustee in bankruptcy takes title as of the date of the adjudication, not to the property owned by the bankrupt at that time, but to the property owned at the time of the filing of the petition." *In re Judson,* 192 Fed. 834, 835, 836, 27 Am. B. R. 704; *Everett* v. *Judson,* 228 U. S. 474, 33 Sup. Ct. 568, 46 L. R. A. (N. S.) 154, 30 Am. B. R. 1; *In re Waite-Robbins Motor Co.,* 192 Fed. 47, 27 Am. B. R. 541; *Bailey* v. *Baker Ice Machine Co.,* 239 U. S. 268, 36 Sup. Ct. 50, 35 Am. B. R. 814.

"The filing of an involuntary petition does not, *ipso facto,* take from the alleged bankrupt his dominion over his property; while his disposition of his property may be invalidated and set aside under certain circumstances, such property remains under his control until the adjudication. The remedy of the petitioning creditors, in case this freedom of trade is abused, is by the appointment of a receiver under § 2 (3) (15), or an appropriate proceeding under § 3e or § 69. . . . Under the present law, the legal title to the property remains in the bankrupt to the date of the appointment of the trustee, but he becomes a trustee thereof for all the creditors." 2 Collier on Bankruptcy (13th Ed.) pp. 1637, 1638.

"The filing of the petition is an assertion of jurisdiction and operates as an attachment upon all property in the control of the bankrupt and also as a caveat and

injunction. . . . But title does not vest until the trustee's qualification; meanwhile in law the title, although defeasible, remains in the bankrupt. . . . The bankrupt himself is quasi trustee of the property and its custodian and caretaker until a trustee, receiver or some other officer of the court is appointed." 4 Remington on Bankruptcy (1923) §§ 1380, 1381, 1382. Unless the bankrupt's property be sequestrated by a receiver or marshal, or the bankrupt himself be enjoined, he has power to deal with the property, after the filing of the petition, until the date of adjudication, in good faith, in the ordinary course of business, and in a manner and to an extent consistent with his trusteeship and not obnoxious to the provisions of the Bankruptcy Act. 4 Remington on Bankruptcy (1923) § 1393; *In re Smith*, 113 Fed. 993; *Gunther* v. *Home Ins. Co.*, 276 Fed. 575, 576; *Johnson* v. *Collier*, 222 U. S. 538, 539, 32 Sup. Ct. 1004, 27 Am. B. R. 454; *Whittlesey* v. *Becker & Co.*, 126 N. Y. Supp. 1046, 25 Am. B. R. 672, 677; *Edison Electric Illuminating Co.* v. *Tibbetts*, 241 Fed. 468, 39 Am. B. R. 640; *In re Allen*, 96 Fed. 512; *State Bank of Chicago* v. *Cox*, 143 Fed. 91, 93; *Toof* v. *City National Bank*, 206 Fed. 250; 7 Corpus Juris, p. 90. The filing of an involuntary petition no doubt puts the property within the control of the court, if it sees fit to exercise the power, but if it does not, the honest dealings of a bankrupt therewith stand, subject, however, to the right of the trustee, when appointed, to avoid, as a preference, any disposition of the property which the bankrupt has made, or to disaffirm acts of the bankrupt under an executory contract which the trustee had a right to renounce. *In re LaPlume Condensed Milk Co.*, 145 Fed. 1013, 1014, 16 Am. B. R. 729; *In re Perpall*, 271 Fed. 466; *In re Sternburg*, 249 Fed. 980; *Bailey* v. *Baker Ice Machine Co.*, *supra*, p. 275; *Acme Harvester Co.* v.

*Beekman Lumber Co., supra,* p. 307; *In re Arctic Stores,* 258 Fed. 688; *American Trust Co.* v. *Wallis,* 126 Fed. 464; *In re Howe,* 235 Fed. 908; *Citizens Union National Bank* v. *Johnson,* 286 Fed. 527. The filing of a petition in bankruptcy ought not to have the instantaneous effect of paralyzing all business dealings by and with the alleged bankrupt. *In re Mertens,* 144 Fed. 818, 823. "The bankrupt is no longer regarded as civilly dead during the period elapsing between the adjudication in bankruptcy and the appointment of a trustee. . . . The title to the property remains in the bankrupt and is subject to his control until the trustee is appointed and qualified." *Dancigar* v. *Smith,* 116 Tex. 269, 274, 289 S. W. 679, 680. Between the filing of the petition and the appointment of the receiver it was permissible for The National Grain Corporation to deal with its property in the ordinary course of business, provided it did so in good faith and not in contravention of the bankruptcy laws. The goods which were the subject of its contract with the plaintiff had arrived at the dock in New York on November 20th, so on November 22d the time for performance had arrived. That the plaintiff had given the Grain Corporation notice to that effect is to be inferred from the statement of facts. There is no indication that the agent of the corporation who went to the dock and took delivery of the cheese had knowledge of the involuntary petition which had been filed, in another State, hardly an hour before, nor is there any intimation, otherwise, that the acceptance of the cheese and the subsequent deposit of it in a refrigerating warehouse was other than in the ordinary course of the Grain Corporation's business and in good faith. It is this portion of the transaction, and not the subsequent dealings, with respect to the warehouse receipt, with the defendant bank, which determines the rights

of the plaintiff relating to the title to the property in question.

Under the legal principles above referred to the act of the corporation in carrying out the contract, until then executory, if in good faith and in the usual course of business, bound the estate, subject to the right of the trustee, when appointed, to renounce the contract, especially if the property is of an onerous and unprofitable nature. "In the execution of their trust they [trustees] are confronted at the outset with the duty of electing whether to assume an existing . . . contract . . . or to renounce it and leave the injured party to such legal remedies for the breach, as the case affords. . . . If they elect to assume such a contract, they are required to take it *cum onere.*" *Atchison, T. & S. F. Ry. Co.* v. *Hurley,* 153 Fed. 503, 510 (213 U. S. 126, 29 Sup. Ct. 466) and cases cited; 4 Remington on Bankruptcy (1923) § 1411; 7 Corpus Juris, p. 136, § 228; 2 Collier on Bankruptcy (13th Ed.) p. 1739. No such renunciation appears or is suggested in the present case. The bank was permitted to retain possession of the warehouse receipt, representing goods, and the proceeds of the sale, although almost immediate actual knowledge of the transaction is attributable to the receiver in bankruptcy. There is no finding or suggestion of action by the receiver or trustee inconsistent with assumption and adoption of the act of the Grain Corporation in taking delivery of the goods, no such affirmative action showing intent, on the part of the trustee, to abandon or reject as is usually considered necessary. 7 Corpus Juris, p. 137; *In re Wiseman & Wallace,* 159 Fed. 236; *First National Bank* v. *Lasater,* 196 U. S. 115, 25 Sup. Ct. 206.

We conclude that, upon the separation and delivery of the seventy cases of cheese, the title therein passed to the Grain Corporation as quasi trustee for all its

creditors, and in behalf of the trustee to be appointed, pending the adjudication and the appointment of such trustee, and that its performance of the contract to purchase and consequent acquirement of the title to the goods by it from the plaintiff have not been renounced or disaffirmed by the trustee but acquiesced in and tacitly ratified. The remedy of the plaintiff on account of the transaction was against the trustee in bankruptcy or the estate, only.

The liability of the defendant bank would be to the estate. A trustee in bankruptcy has a right to take steps to effectuate avoidance of a disposition by a bankrupt of his property, after as well as before bankruptcy proceedings have been instituted, which results in a preference to the third person to whom such disposal was made. *In re LaPlume Condensed Milk Co.,* 145 Fed. 1013; *In re Zotti,* 186 Fed. 84; *In re Fuller,* 294 Fed. 71; *In re Perpall,* 271 Fed. 466; *In re Denson,* 195 Fed. 854.

The right of the defendant bank to retain the proceeds of the sale of the cheese, as against the trustee, depends upon whether it received the warehouse receipt in good faith, without knowledge of any breach of duty by the party negotiating it (the Grain Corporation), and gave value therefor. General Statutes, § 4599. The bank became the holder thereof on November 23d, the day following that on which the petition in bankruptcy had been filed; the bank is located within the district in which the petition was filed; by reason of the overdrawn condition of the Grain Corporation's deposit therein the bank had a substantial financial interest in the estate of the bankrupt; its president had long been a director of the Grain Corporation, and on the very day of this transaction accepted appointment and qualified as temporary receiver in bankruptcy of the corporation. We think the infer-

ence follows, inescapably, that the bank is to be charged with knowledge of the bankruptcy proceeding when it received the warehouse receipt as security for the note, in the form of a loan, for which it paid no consideration except a credit of the proceeds of the note, $1516.12, to the Grain Corporation's overdrawn account. In consequence the bank was not a bona fide purchaser or holder in due course of the warehouse receipt and obtained no right to retain the same, as against the estate of the bankrupt for the benefit of all of its creditors.

So far as this record discloses neither the temporary receiver in bankruptcy nor the trustee has made any effort, by legal demand or process, to secure for the estate the retransfer of the warehouse receipt or to recover the property or the substituted proceeds of its sale. Since the present plaintiff is not maintaining this action for the benefit of all of the creditors of the Grain Corporation, but for itself only, we do not determine whether the trustee, if he has not been finally discharged and the bankrupt estate settled, or the creditors of the Grain Corporation, would have the right to now take action to recover such proceeds.

We answer the questions reserved as follows: (1 and 2) As against the plaintiff, the Grain Corporation acquired title to the cheese as quasi trustee for all its creditors and, upon appointment, the receiver and the trustee succeeded to all the title and interest which the Grain Corporation had so obtained. (3 and 4) The defendant bank obtained no interest in the cheese by its acquisition of the warehouse receipt, but this plaintiff has no right of recovery against the bank. The plaintiff's claim is against the trustee.

In this opinion the other judges concurred.