**In the Matter of AUTOCUE SALES & DISTRIBUTING CORP., Bankrupt.**

United States District Court
S. D. New York.
April 28, 1958.

See, also, 148 F.Supp. 685.

Henry & Myers, New York City, for petitioners.

Helfat & Helfat, New York City, for trustee, J. Nathan Helfat, New York City, of counsel.

DIMOCK, District Judge.

This is a petition to review the order of Referee in Bankruptcy Irwin Kurtz directing Allen Murray Myers and Teleprompter Corporation to turn over to the trustee certain accounts receivable transferred to Myers by the bankrupt after the filing of the petition. The petition also seeks review of the Referee's order which held that the controversy could be determined in a summary proceeding.

The Trustee moved by order to show cause on June 13, 1957, to set aside the transfers. The trustee's petition alleged that, between the time of the filing of the petition in bankruptcy and the adjudication, transfers of certain accounts receivable were made by the bankrupt to petitioner Myers who was acting on behalf of petitioner Teleprompter Corporation. Petitioners' answer admitted the fact of transfers, alleged that they had acted in good faith and had paid a present fair equivalent value therefor, offered to rescind the transfers in return for the consideration paid and prayed that, in the event of a turnover order, it be upon the condition that the trustee would return the consideration.

On September 5, 1957, the Referee ordered a preliminary hearing on the question of the summary jurisdiction of the bankruptcy court to determine the controversy. Myers and Teleprompter Corporation appeared specially to contest the summary jurisdiction of the bankruptcy court and, after a hearing, the Referee, in an opinion and order dated December 30, 1957, decided that the bankruptcy court had summary jurisdiction and set the matter down for hearing on the merits on January 9, 1958 unless both parties stipulated that the controversy be decided on the record made at the preliminary hearing. The trustee moved on January 3, 1958, for a turnover order based on the record on the preliminary hearing. On January 9, 1958, Myers and Teleprompter Corporation, hereinafter petitioners, petitioned for review of the order which declared that the court had summary jurisdiction and refused to proceed with further hearing. The Referee then made the turnover order on January 16 and, on January 20, petitioners filed their supplemental petition to review both orders.

Petitioners assign error in the entering of the final turnover order before review of the order on the question of summary jurisdiction. Assuming that the first order was reviewable, petitioners were in no way prejudiced by the execution of that order before review. No application was made pursuant to section 39(c), 11 U.S.C. § 67, to suspend execution of the order pending review. Petitioners had a hearing on all the issues; they were entitled to a further hearing but, since they did not choose to have one held, the Referee's completion of the proceeding was not error. I will review both orders.

An involuntary petition in bankruptcy was filed on September 5, 1956, an amended petition was filed on October 10, 1956, pursuant to stipulation with the petitioning creditors, and the second and final amended petition was filed on November 29, 1956, pursuant to stipulation and by order of the District Court. The transfers in question were made on November 30, 1956, December 3 and December 7, all after the filing of the final amended petition. The order of adjudication was entered on December 10, 1956.

Section 70(d) and subdivisions (1), (3) and (5) thereof, 11 U.S.C. § 110(d) (1), (3), (5), provide:

"(d) After bankruptcy and either before adjudication or before a receiver takes possession of the property of the bankrupt, whichever first occurs—

"(1) A transfer of any of the property of the bankrupt, other than real estate, made to a person acting in good faith shall be valid against the trustee if made for a present fair equivalent value or, if not made for a present fair equivalent value, then to the extent of the present consideration actually paid therefor, for which amount the transferee shall have a lien upon the property so transferred;

\*      \*      \*      \*

"(3) A person having actual knowledge of such pending bankruptcy shall be deemed not to act in good faith unless he has reasonable cause to believe that the petition in bankruptcy is not well founded;

\*      \*      \*      \*      \*

"(5) A person asserting the validity of a transfer under this subdivision shall have the burden of proof. Except as otherwise provided in this subdivision and in subdivision g of section 21 of this Act, no transfer by or in behalf of the bankrupt after the date of bankruptcy shall be valid against the trustee".

By reason of a statement in petitioners' answer that, at the time of the transfers, they had knowledge "of the filing of the involuntary petition in bankruptcy", the Referee held that petitioners had admitted that they had had actual knowledge of the pendency of the petition. In addition he found that they had not sustained their burden of proof that they had reasonable cause to believe

that the petition in bankruptcy was not well founded. The Referee held, therefore, that petitioners were not acting in good faith and that the trustee was entitled to recover the transferred accounts.

Petitioners contend that they were entitled to a plenary proceeding because their claim was substantial. It is true that, where the controversy is with respect to property transferred before the filing of the petition, the bankruptcy court must, before it can hear the controversy in a summary proceeding, make a preliminary inquiry to determine whether the adverse claim is substantial or merely colorable. Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770. Once the petition is filed, however, the trustee is vested with title to all property in the possession of bankrupt, section 70(a), 11 U.S.C. § 110 (a), and the bankruptcy court has summary power to determine controversies with respect to property transferred after that date irrespective of the substantiality of the transferee's claim. In re Borok, 2 Cir., 50 F.2d 75; Street v. Pacific Indemnity Co., 9 Cir., 61 F.2d 106; Bank of California National Ass'n v. McBride, 9 Cir., 132 F.2d 769; cf., In re Worrall, 2 Cir., 79 F.2d 88. Since, in this case, the bankrupt had undisputed possession of the accounts receivable at the time of the filing of the petition and title to that property had vested in the trustee as of that time, the controversy as to the subsequent transfer was properly determined in a summary proceeding.

Petitioner cites 4 Collier on Bankruptcy, 14 ed., § 70.68, p. 1337, in support of his contention that a plenary suit is required to determine a substantial claim under section 70(d). Collier's statement is erroneous. See MacLachlan, Bankruptcy, § 194, p. 206; § 293, p. 346. He relies on four cases as ground for it: In re Zotti, 2 Cir., 186 F. 84, certiorari denied 223 U.S. 718, 32 S.Ct. 522, 56 L.Ed. 628; In re Laplume Condensed Milk Co., D.C.M.D.Pa., 145 F. 1013; In re Retail Stores Delivery Corporation, D.C.S.D.N.Y., 11 F.Supp. 658, and In re Ferrell, D.C.S.D.Fla., 2 F.Supp. 348.

The Laplume case is the only one of the four cases cited by Collier which lends him any support and its language is contra to In re Borok, supra, and other similar cases cited above.

The opinion in the Zotti case was expressly based on the view existing at the time of its decision that, under the Bankruptcy Act of 1898, § 70(a), 30 Stat. 565, the trustee was not vested with title until adjudication and therefore the court had no summary power with respect to transfers before adjudication. Subsequent cases, however, introduced the doctrine that the trustee's title related back to the date of the petition, Everett v. Judson, 228 U.S. 474, 478–479, 33 S.Ct. 568, 57 L.Ed. 927, and, following this view, the summary power of the bankruptcy court was recognized with respect to transfers after the petition. See In re Borok, supra, and other cases cited above. Under the present act, section 70(a) clearly provides that the trustee is vested with title as of the time of the filing of the petition and the cases uniformly hold that the summary power of the bankruptcy court attaches to property in undisputed possession of the bankrupt at that time.

It will be remembered that Referee Kurtz held that petitioners had admitted having actual knowledge of the pending bankruptcy.

Petitioners stoutly maintain that, at the time of the transfers in question, they did not know that the second and final amended petition in bankruptcy had been filed on November 29, 1956. Petitioner Myers, as attorney for petitioner Teleprompter did, however, have the records examined soon after the original petition in bankruptcy was filed on September 5, 1956. A motion was made to dismiss the petition on the ground that the allegations purporting to set forth acts of bankruptcy were not sufficiently definite and certain. Pursuant to stipulation with the petitioning creditors an

amended petition was filed on October 10, 1956. Again petitioner Myers sent a representative to examine and report upon the contents of the amended petition. Mr. Myers reported to petitioner Teleprompter by letter dated October 12, 1956, quoting the provisions of the new petition with respect to the acts of bankruptcy. Again a motion was made to dismiss this, the amended petition and, on stipulation of the parties, provision was made for the filing of the second amended petition. This provision was contained in an order entered November 13, 1956, which gave leave to the petitioning creditors to file a second amended involuntary bankruptcy petition specifically described therein which, among other things, should restrict certain preferential transfers, which were alleged for the first time in the first amended petition filed October 10, 1956, to such transfers as took place not earlier than four months prior thereto, to wit, June 10, 1956. The order provided that the first amended petition be dismissed "with leave to the petitioning creditors to file a second amended petition within ten days of the service of a copy of the order" and that the alleged bankrupt should serve and file its answer within ten days thereafter. Petitioner Myers wrote to petitioner Teleprompter on November 21, 1956, describing this order and stating that the petitioning creditors had been granted ten days to file a second petition. As above stated, the second amended petition was filed on November 29, 1956. It alleged that all of the acts of bankruptcy which had been alleged in the original petition were committed within four months prior to the filing of the original petition and that the acts of bankruptcy introduced by the first amended petition were limited to transactions taking place within four months prior to the filing of the amended petition.

While petitioners were thus alerted to the probability that a second amended petition would be filed soon after the expiration of ten days after the entry of the order of November 13, 1956, they maintain that, when they accepted the transfers here involved on November 30, December 3, and December 7, they did not know that the new petition had been filed on November 29, 1956. Of necessity they admit knowledge of the filing of the original petition and the first amended petition.

The statute, section 70(d), after providing that a transfer of the property of the bankrupt made after bankruptcy to a person acting in good faith shall be valid, goes on in subdivision 3, to provide, "A person having actual knowledge of such pending bankruptcy shall be deemed not to act in good faith unless he has reasonable cause to believe that the petition in bankruptcy is not well founded". Petitioners' position must be that the bankruptcy was not pending after the order of November 13 which dismissed the first amended petition and allowed the filing of the second amended petition, that the proceedings only became pending again when the second amended petition was filed on November 29, and that they had no actual knowledge of that filing at the time when the transfers were made.

The fact that petitioners had no actual knowledge of the filing of the second amended petition is immaterial. Within the meaning of section 70(d)(3), the bankruptcy was pending continuously from the time of the filing of the original petition on September 5, 1956, and petitioners had actual knowledge of its pendency from a time soon after the filing of the original petition and continuously thereafter. The fact that they did not know of the filing of the second amended petition on November 29 does not affect their knowledge of the pendency of the proceeding.

The words of section 70(d)(3) are "knowledge of such pending bankruptcy". These words obviously refer to the first words of section 70(d), "[a]fter bankruptcy and either before adjudication or before a receiver takes possession". The time of "bankruptcy" is thus the time when the period begins but there is no statement as to the time when "bank-

**22**

ruptcy" is deemed to occur. The critical time is doubtless the same, however, as the time when the trustee is vested with the estate. That is fixed by section 70 (a) as "the date of the filing of the petition initiating a proceeding". A "bankruptcy" is thus pending from the time of the petition "initiating" the proceeding, not of some later amended petition.

In addition, the intention of the parties and the court in the instant proceeding that the proceeding should be deemed to be pending from the time of the filing of the original petition is clear from the fact that the court permitted in the second amended petition the allegation of acts of bankruptcy running back through the period of four months prior to the filing of the original petition.

Moreover, one purpose of permission to amend after the dismissal of the petition was to obviate the necessity of a reservice of the new petition upon the bankrupt which would have been necessary if the previously existing proceeding were no longer pending.

Rule 15(c) F.R.Civ.P., 28 U.S.C., which has become effective in bankruptcy cases by virtue of General Order in Bankruptcy 37, 11 U.S.C. following section 53, provides that, "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." In Glint Factors v. Schnapp, 2 Cir., 126 F. 2d 207, the Court of Appeals permitted an amendment of the petition in bankruptcy which corrected a previously defective allegation of an act of bankruptcy which had occurred more than four months prior to the amendment and less than four months prior to the filing of the original defective petition. Thus, despite the fact that petitioners did not know of the filing of the second amended petition at the time of the transfers, Referee Kurtz was correct when he equated petitioners' admission that they knew of the filing of the petition at the time of the transfers to an admission that they knew of the pending bankruptcy at that time.

■ The record amply supports the Referee's finding that petitioners had not sustained their burden of proof that they had reasonable cause to believe that the petition was not well founded.

■ Petitioners say that, even though the bankruptcy court makes this finding that a transferee had actual knowledge of the pending bankruptcy and that he failed to maintain his burden of proof that he had reasonable cause to believe that the petition was not well founded, it will not follow automatically that he did not act in good faith but only that he will be "deemed" not to have acted in good faith. It is argued that the word "deemed", as used in section 70(d) (3), merely creates a rebuttable presumption against the transferee. I cannot believe that Congress created any such complicated process of inquiry as would be represented by imposing an over-all burden of proof of all of the elements of the validity of the transfer upon the transferee under section 70(d) (5), coupled with a second-chance burden of proof upon the transferee to prove good faith if and when he failed to sustain the burden of proof of lack of actual knowledge of the pending bankruptcy or lack of reasonable cause to believe that the petition was not well founded. The word "deemed" means "conclusively deemed".

■ It is not to be wondered that petitioners go to extremes in an attempt to find some amelioration of the extraordinarily arbitrary provisions of the statute. There seems to be no escape from the fact that, even though the transferees gave more than adequate consideration for the accounts receivable transferred to them and the bankrupt used this consideration for the payment of taxes and wage claims, the transferees must now reassign the accounts receivable or their proceeds without the benefit of the return of the consideration to which they

would be entitled upon conventional rescission of the transaction. Petitioners put the case of a department store against which a petition in bankruptcy has been filed with resulting publicity in the newspapers. Business continues as usual and a customer who has read of the proceedings but has no views as to their validity buys an overcoat and pays $100 for it. The store is later declared bankrupt and the trustee brings a summary proceeding for the return of the overcoat. Under the Referee's construction of the statute the trustee is entitled to the return of the overcoat but need not return the $100 that was paid for it. Such a statute would seem to be calculated to put a stop to any business as soon as a petition in bankruptcy was filed against it. Nevertheless, I see no escape from that construction of the Bankruptcy Act.

Section 70(d) (1) provides that, "A transfer of any of the property of the bankrupt * * * made to a person acting in good faith shall be valid against the trustee if made for a present fair equivalent value or, if not made for a present fair equivalent value, then to the extent of the present consideration actually paid therefor, for which amount the transferee shall have a lien upon the property so transferred".

The act specifically provides that the transferee shall have a lien on the property transferred to the extent of the consideration paid in one instance: where the transfer is set aside because the consideration paid was less than fair value but where the transferee acted in good faith. By negative implication, if the transfer is set aside because the transferee did not act in good faith, the transferee has no right to a lien regardless of whether he paid fair value or less than fair value.

I reluctantly conclude that the Referee was correct in requiring petitioner to turn over the accounts receivable without directing refund of the consideration paid.

The orders are affirmed.